UNITED STATES DISTRICT COURT
EASTERN LOUISIANA

NO. 2:25-cv-172

---

**RASHEED MCCLEBB,**
**Petitioner**
**v.**
**ORLEANS PARISH SHERIFF SUSAN HUTSON,**
**Respondent**

---

**EMERGENCY PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

---

Caroline Gabriel, La. Bar # 38224
William Most, La. Bar # 36914
Most & Associates, LLC
210 St. Charles Ave., Ste 2500 #9685
New Orleans, LA 70170
(985) 441-9355
Caroline.gabriel.ma@gmail.com
williammost@gmail.com

Madeleine Jennings, La. Bar # 38287
Orleans Public Defenders
2601 Tulane Avenue, Suite 700
New Orleans, LA 70119
(504) 821-8101
(504) 821-5285 (fax)
Mjennings@opdla.org

**Introduction**

This emergency habeas petition seeks to protect Rasheed McClebb's double jeopardy rights. In 2023, Mr. McClebb was indicted for second degree murder, a crime for which Mr. McClebb is factually innocent.

On July 8, 2024, Mr. McClebb's trial began in Orleans Parish Criminal District Court. Two days later, during jury deliberations, the judge *sua sponte* declared a mistrial for a "hung jury" and released the jury. Mr. McClebb's attorneys subsequently discovered that the judge was incorrect – the jury had given no indication that it could not reach a verdict, and the jury's final note indicated that they were prepared and intending to continue deliberating.

As a result, the prosecution of Mr. McClebb must be complete. Federal double jeopardy rights attach at the beginning of a trial, and the U.S. Supreme Court has clearly indicated that a retrial is *only* available when a sworn jury cannot reach a verdict or when an unforeseeable event makes it practically impossible to continue the initial trial.

Despite the clear constitutional prohibition, the State is now seeking to re-try Mr. McClebb a second time for the same crime, even though neither exception to the double jeopardy clause applies here.

Mr. McClebb moved to quash the indictment, but his motion was denied by the trial court, state court of appeal, and Louisiana Supreme Court. Having exhausted his state-court remedies, Mr. McClebb asks this Court to protect his right under the United States Constitution to not be tried twice for the same crime.

**Jurisdiction and Venue**

1.      This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 2241(c)(3), 28 U.S.C. § 1651, and Article I, § 9 of the U.S. Constitution.

2.      Venue is proper in this judicial district under 28 U.S.C. 2241(d), because Petitioner McClebb is currently in custody in this district (at Orleans Parish Prison, Louisiana).

3.      Mr. McClebb has exhausted his state court remedies as explained in detail below.

4.      *Younger* abstention does not apply to the species of constitutional claims brought here, insofar as the rights asserted "include[] not only the right to prevail in subsequent proceedings on constitutional grounds, but also the right to be free from the burdens of the subsequent trial itself." *Showery v. Samaniego*, 814 F.2d 200, 201 n.5 (5th Cir. 1987) (holding that Double Jeopardy Claims may be asserted in § 2241 petition); *see also Davis v. Herring*, 800 F.2d 513, 516 (5th Cir. 1986) (same).

**Parties**

5.      Petitioner Rasheed McClebb is a prisoner incarcerated in Orleans Parish, Louisiana.

6.      Respondent is the State of Louisiana.

**Factual and Procedural Summary: Double Jeopardy Claim**

7.      At trial in this matter, the judge declared a mistrial even though the jury gave no indication that they could not reach a verdict; therefore Mr. McClebb cannot be tried again.

8.      Mr. McClebb was indicted on March 9, 2023 by the State of Louisiana in Orleans Parish for one count of second degree murder, in violation of La. R.S. 14:30.1.

9.      On July 8, 2024, a jury trial commenced.

10.     Two days later, after hearing the entire case, the jury retired to deliberate at about 12:17

p.m.  Ex. 1 (Affidavit of Ifechiluru Ugwu ("Ugwu Aff.")) ¶ 4.b.  At 1:57 p.m., the jurors requested

to see some of the evidence again.  Several exhibits were sent back with them and they were

allowed to watch surveillance footage again. *See id*. ¶ 4.c. At 3:32 p.m., the jurors sent a note

asking what to do if they were stuck. The judge instructed them to continue deliberating. *See id*. ¶

4.d.  At 4:27 p.m., the jurors asked to see more evidence which was provided to them. They

continued to deliberate. *See id*. ¶ 4.e.

11.     Then, at 5:18 p.m., the district court brought the jurors into the courtroom and advised the

various sentencing ranges. *See id*. ¶ 4.f.  The jurors had not asked for this information. Id. Shortly

before 6:00 p.m., the jury sent another note. *See id*. ¶ 4.g. At 6:00 p.m., the district court again

brought the jurors back into the courtroom and declared a mistrial. *Id*. The district court then

excused the jurors from the courthouse.

12.     Critically, the court did not reveal the contents of this fourth note to either the state or the

defense. At the time, the Defense presumed the jury's note had indicated they were hung. In fact,

as the defense later learned, the note was sent on behalf of one specific juror, who wanted to know

how late the jury was expected to deliberate so she could make personal accommodations.  *See id*.

¶ 4.g.

13.     The trial court brought in the jury and said the following:

> Ladies and gentlemen, based upon the fact that we've been
> attempting to get a verdict in this matter now for five and a half
> hours, I'm going to declare a mistrial. This case is over with. I thank
> you guys for your time and attention. At this point, if you wish to
> answer questions from the state and/or the defense you can do that.
> If you decide that you're ready to go home, collect your belongings,
> ladies and gentlemen, and we'll see you guys – I'm sorry. Y'all are
> finished, so y'all don't have to come back if you did have another

> day. I will take care of that. All right? You don't have to. Are there
> any questions of me? Y'all did a good job. This is the process. Are
> there any questions of me? All right, ladies and gentlemen, y'all did
> y'all job. This is how it happens. Okay. This is how it happens.
> Nobody's perfect. We don't have a perfect system. So as I
> mentioned, thank y'all. If one of the jurors want to talk to you, they
> can. If you don't feel like talking, you don't have to say anything.
> Just be polite, and I wish to go on my way. Please collect your
> belongings, no questions of me. Y'all have a good evening. Thank
> you. Go ahead, Ms. Smith. You said you wanted something or you
> don't?

*Ex. 2* (Transcript of Deliberations) at 8-9.

14.    It was not until after the jurors were excused from the courtroom that defense counsel

learned that the Court had *sua sponte* declared a hung jury and a mistrial.

15.    At no time did the jurors indicate that they could not come to a decision, nor did the Court

make any inquiry as to (1) whether the jurors were in fact hung; (2) whether more time deliberating

would be beneficial. *See id.* ¶¶ 4.h.–j.

16.    Furthermore, because the judge concealed that *he made* the determination that the jury was

hung, the court did not provide the defense with an opportunity to object to the dismissal of the

jury, preventing the issuance of a twenty-four-hour stay of its mistrial order. *See* La. Code Crim.

Proc. art. 775.1.

17.    The district court set Mr. McClebb for a pretrial conference on July 26, 2024. On that date,

Mr. McClebb filed a motion to quash the bill of indictment, arguing that the Double Jeopardy

clauses of the Louisiana and U.S. Constitutions bar the state from re-trying Mr. McClebb on the

same offense. *See Ex. 3* (Motion to Quash the Bill of Information).

18.    The district court summarily denied the Motion to Quash on that same day. *Ex. 4*

(Transcript of July 26 Proceedings) at 5. In so doing, the district court held that a mistrial was

appropriate because the length of the deliberations exceeded the length of the trial testimony. *Id.* at 5 (By the Court: "How long did they hear testimony? … How did they deliberate? . . . You just answered your own question. Request denied."). Notably, in reaching this result, the trial court did not assert that the jurors indicated that they could not reach a decision. *See Ex. 4*.

19.    Mr. McClebb gave oral notice to seek a writ and asked for a stay. The district court denied the stay and declined to set a return date. *See Ex. 4* at 5. Defense counsel filed a written notice of intent on July 31, 2024, which the district court declined to sign.

20.    Although the district court refused to set a return date, Mr. McClebb filed his writ application with the Fourth Circuit within thirty days of the denial of his motion to quash, on August 20, 2024. Through that writ application, Mr. McClebb sought expedited review. A panel of the Fourth Circuit denied the request for expedited review. Two days later, on August 22, 2024, the non-emergency panel ordered the parties to submit supplemental briefing. That order also required the district court to provide a *per curiam* opinion.

21.    The state submitted its opposition to Mr. McClebb's writ application on August 28, 2024.

22.    The trial court submitted its *per curiam* that same day, which not only memorialized the reasons provided at the July 26 pre-trial conference, but also provided new reasons for the first time. *See Ex. 5* (District Court *Per Curiam*). Specifically, the district court stated that the jury indicated that they were "hopelessly deadlocked," that "no further deliberations would help," and that "[s]everal jurors indicated that they were not changing their decision." However, the jury did not make these statements on the record, and the district court made no reference to such statements at any time before issuing its *per curiam*.

23.    Mr. McClebb timely submitted his response brief on August 29, 2024.

24.    On September 16, 2024, the Fourth Circuit issued a written ruling granting the writ application but denying Mr. McClebb's requested relief, holding that Mr. McClebb was prohibited from seeking appellate review of his claim because he failed to lodge a contemporaneous objection to the district court's ruling. *Ex. 6* at 6.

25.    Mr. McClebb timely petitioned the Fourth Circuit for rehearing on September 24, 2024. Through his Brief in Support of Application for Rehearing, Mr. McClebb demonstrated that the district court's concealment of the basis for its mistrial declaration excused his failure to object contemporaneously. The Fourth Circuit summarily denied his request for rehearing the following day, September 25, 2024.

26.    Mr. McClebb timely appealed to the Louisiana Supreme Court. On October 4, 2024, the Louisiana Supreme Court denied the writ application.

27.    This petition now timely follows.

28.    Mr. McClebb is set to proceed to trial on March 31, 2025. The district court denied a stay of the proceedings pending the outcome of the initial writ application. *Ex. 4* at 5.[1]

### CLAIM 1:    A SECOND TRIAL WOULD VIOLATE MR. MCCLEBB'S RIGHT TO BE FREE FROM DOUBLE JEOPARDY

#### I.    Because There was no "Manifest Necessity" for Declaring a Mistrial at Mr. McClebb's First Trial, Double Jeopardy Clearly Prohibits the State from Re-Trying Mr. McClebb.

Both the United States and Louisiana constitutions forbid placing a criminal defendant twice in jeopardy for the same offense. U.S. Const. amend. V; La. Const. art. I § 15.  The Louisiana

---

[1] Mr. McClebb intends to file a Motion for Stay and for Expedited Consideration.

Code of Criminal Procedure provides that when "[t]rial for the offense charged would constitute double jeopardy," a bill of indictment may be quashed.  La. C. Cr. P. art. 532(6).  Because the district court's *sua sponte* declaration of a mistrial—without any request from the parties, without Mr. McClebb's consent and without a "manifest necessity"—violated both federal and state constitutional law, re-trying Mr. McClebb for the offense alleged in count 1 of the Bill of Indictment would constitute double jeopardy. Accordingly, the district court committed reversible error by denying Mr. McClebb's motion to quash in advance of his second trial for the same offense. This Court should grant the writ and reverse the trial court's erroneous denial of Defendant's Motion to Quash Bill of Indictment.

> **a. The Double Jeopardy Clause and Louisiana Law require a "manifest necessity" before a judge can declare a mistrial.**

The protection against double jeopardy is enshrined in the Fifth Amendment to the United States Constitution. As relevant here, the prohibition against "double jeopardy" bars the re-prosecution of a criminal defendant when, after jeopardy has attached, the trial court *sua sponte* declares a mistrial without the defendant's consent, and there was not a manifest necessity for the mistrial. *See United States v. Perez*, 9 Wheat. 579 (1824). The basic idea for fixing the attachment of jeopardy to the beginning of trial, as opposed to the end, is that once a jury has been sworn, a defendant has a "valued right to have his trial completed by a particular tribunal," *Wade v. Hunter*, 336 U.S. 684 (1949), to have his trial completed "once and for all" and "conclude his confrontation with society," *United States v. Jorn*, 400 U.S. 470, 486 (1971).

An exception to the general rule exists only where an initial mistrial is the result of "manifest necessity," a doctrine which allows for re-prosecution under limited and carefully delineated circumstances. *United States v. Perez*, 22 U.S. (9 Wheat.) at 580. The State "shoulders

8

the heavy burden of demonstrating manifest necessity." *United States v. Fisher*, 624 F.3d 713, 718 (5th Cir. 2010) (finding no manifest necessity where two critical government witnesses were unavailable).

A "manifest necessity" for a mistrial exists only when a sworn jury cannot reach a verdict, *Logan v. Perez*, 144 U.S. at 263, or when an unforeseeable event makes it practically impossible to continue the initial trial. *See, e.g., Wade*, 336 U.S. at 684 (recognizing "manifest necessity" for mistrial in court-martial proceeding where enemy was advancing on trial location). But outside of these extreme circumstances, a "manifest necessity" does not exist, even if a mistrial would be convenient or is declared to assist the defendant. The United States Supreme Court has held that where a mistrial is the result of a witness being unavailable because a party inadvertently failed to serve the witness, retrial is barred. *Downum v. United States*, 372 U.S. 734 (1963). The Court has similarly refused to allow re-prosecution when a mistrial occurs because a trial judge—although genuinely trying to benefit the defendant—erroneously declares a mistrial: the Court explained that the "doctrine of manifest necessity stands as a command to trial judges not to foreclose the defendant's option [to continue with the first trial] until a scrupulous exercise of judicial discretion leads to the conclusion that the ends of public justice would not be served by a continuation of the proceedings." *Jorn*, 400 U.S. at 483.

A "manifest necessity" does not exist where a mistrial is declared to avoid inconveniencing sworn jurors. As the Supreme Court explained in 1978:

> The reason for holding that jeopardy attaches when the jury is empaneled and sworn lies in the need to protect the interest of an accused in retaining a chosen jury. . . .. Throughout [our] history, there ran a strong tradition that, once banded together, a jury should not be discharged until it had completed its solemn task of announcing a verdict**.**

*Crist v. Bretz*, 437 U.S. 28, 36 (1978).

When a trial court declares a mistrial *sua sponte* but fails to consider alternatives (*e.g.*, a continuance) and fails to weigh the defendant's interest in having the trial completed, the "manifest necessity" standard is, automatically, not met. To carry the heavy burden of proving "manifest necessity," prosecutors must "show that the district court carefully considered whether reasonable alternatives existed and that the court found none." *Fisher*, 624 F.3d at 722. *Accord United States v. Rivera*, 384 F.3d 49, 56 (3d Cir. 2004) ("Critically, a mistrial must not be declared without prudent consideration of reasonable alternatives. . . . Where a District Court *sua sponte* declares a mistrial in haste, without carefully considering alternatives available to it, it cannot be said to acting under a manifest necessity."); *Walck v. Edmondson*, 472 F.3d 1227, 1240 (10th Cir. 2007) (granting habeas relief and rejecting prosecutor's protests of "manifest necessity" because "the state trial judge did not sufficiently consider the viable and reasonable alternatives to a mistrial").

The Louisiana Constitution guarantees that "[n]o person shall be twice placed in jeopardy for the same offense, except on his application for a new trial, when a mistrial is declared, or when a motion in arrest of judgment is sustained." La. Const. art. I § 15. "Generally, a mistrial declared by the trial court without the consent of the defendant will bar further prosecution of him for the same criminal conduct." *State v. Encalarde*, 579 So.2d 990, 991 (La. App. 4 Cir. 1990) (citing *State v. Birabent*, 305 So. 2d 448 (La. 1975)). In particular, and as the U.S. Supreme Court has recognized for centuries, "the classical test for lifting the double jeopardy bar to a second trial is the 'manifest necessity' standard." *Oregon v. Kennedy*, 456 U.S. 667 (1982) (citing *United States v. Perez*, 9 Wheat. 579, 580 (1824)).

The Louisiana Supreme Court has acknowledged that the definition of a "manifest necessity" under Louisiana law is narrower than the comparable federal standard, and explicitly limits the "scope of the manifest necessity rule" to those situations enumerated in Code of Criminal Procedure Article 775. *State v. Joseph*, 434 So.2d 1057, 1060 (La. 1983). "In Louisiana, a mistrial is a drastic remedy." *Lacey v. Cain*, No. CV 15-0085-BAJ-EWD, 2018 WL 1465265, at *9 (M.D. La. Feb. 27, 2018), *report and recommendation adopted*, No. CV 15-00085-BAJ-EWD, 2018 WL 1463690 (M.D. La. Mar. 23, 2018).

Specifically, under Louisiana law, "mistrial may be ordered, and . . . the jury dismissed" in a finite set of situations:

> (1)  The defendant consents thereto;
> (2)  The jury is unable to agree upon a verdict;
> (3)  There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
> (4)  The court finds that the defendant does not have the mental capacity to proceed;
> (5)  It is physically impossible to proceed with the trial in conformity with law; *or*
> (6)  False statements of a juror on voir dire prevent a fair trial.

La. C. Cr. P. art. 775 (emphasis added). If the trial court's mistrial order does not fall legally within Article 775's safe harbor, jeopardy attaches, and double jeopardy protections bar retrial. *See State v. Davenport*, 147 So.3d 137 (La. 2014) ("Under Louisiana law, all other dismissals of the jury prior to verdict without the defendant's consent will not be mistrials at all, even though the court may so label them, but will be *illegal dismissals*, and in such cases the principles of double jeopardy will come into operation." (emphasis added)). *See also* La. C. Cr. P. art. 591 (specifying that double jeopardy bars retrial on the same offense except on the defense's motion, or where "a new trial has been granted or judgment has been arrested, or where there has been a

mistrial *legally ordered under the provisions of Article 775* or ordered with the express consent of the defendant" (emphasis added)).

### b. A second trial in this matter would violate Double Jeopardy and Louisiana Law.

In Mr. McClebb's case, jeopardy clearly attached when the jury was sworn on July 8, 2024, and subsequently went on to hear both sides' evidence and begin deliberations. *See* La. C. Cr. P. art. 592; Ugwu Aff. ¶¶ 4.a.–b. Retrial of the same evidence before a new jury would only be permitted, then, if the mistrial was "legally ordered under the provisions of Article 775." La. C. Cr. P. art. 591. The mistrial in Mr. McClebb's case in no way comports with this requirement.

First, the mistrial was plainly ordered without Mr. McClebb's consent or request. La. C. Cr. P. art. 775(1); *Ex. 2* at 8-9. Second, there was no indication that any jurors made false statements on voir dire. *See* La. C. Cr. P. art. 775(6); Ugwu Aff. ¶¶ 4.h.–j. Third, at no time did any party raise any defect in the proceedings which would make any conviction legally reversable—let alone did the district court make any findings to that effect at the time it ordered the mistrial. La. C. Cr. P. art. 775(3); *cf. Joseph*, 434 So.2d at 1058 (finding double jeopardy barred retrial of second degree murder charges where trial judge had ruled that the state's failure to rebut the defendant's testimony was a legal defect in the proceedings which would make any judgment entered upon a verdict reversible). Fourth, Mr. McClebb gave no indication that he did not have the mental capacity to proceed with trial. La. C. Cr. P. art. 775(4). Fifth, the Court made no findings on the record that it would be "physically impossible to proceed with the trial in conformity with law." La. C. Cr. P. art. 775(5); *Ex. 2*.

Finally, despite the judge's mere assumption, the jury did not indicate—and certainly did not explicitly state—that they were unable to reach a verdict. *See* La. C. Cr. P. art. 591(2); Ugwu

Aff. ¶¶ 4.h.–j. While one juror apparently inquired about the need to make childcare arrangements if the deliberations continued, *see* Ugwu Aff. ¶ 4.g., such a request hardly rises to the level of physical impossibility or inability to reach a verdict. *See, e.g.*, *State v. Tennors*, 923 So. 2d 823, 833 (La. App. 3 Cir. 2006) ("While the trial court's desire to accommodate jurors is commendable, such accommodation should not preempt a defendant's right to be tried by a properly empaneled jury selected by him."). In fact, the Code specifically empowers district courts to suspend deliberations under those circumstances and permit the jurors "to return for continued deliberations on the next day of operation of the court." *See* La. Code Crim. Proc. art. 791(C)(2). In fact, the jury's final note – asking about the logistics of staying longer – indicated that they intended to and were prepared to continue deliberating.

The district court's *sua sponte* order of mistrial in Mr. McClebb's prosecution, without his consent, was an "illegal dismissal[]" unsupported by Louisiana law. *See Davenport*, 147 So. 3d at 137. Retrying him would illegally place him "twice . . . in jeopardy for the same offense," in violation of Article I § 15 of the Louisiana Constitution. This Court must therefore reverse the trial court's denial of the motion to quash.

## II.    Mr. McClebb's Failure to Object Contemporaneously was Excused by the District Court's Concealment of the Contents of the Jury's Note.

For decades, the Louisiana Supreme Court has "refused to apply the contemporaneous objection rule as a bar to review" of egregious trial errors, where the failure to object was excusable. *State v. Arvie*, 505 So.2d 44, 47-48 (La. 1987). This case presents such exceptional circumstances. Mr. McClebb was denied his right to the full deliberations of his jury, and now he faces a second trial for the same offense due to the trial court's *sua* sponte declaration of a mistrial without manifest necessity. At the time of that mistrial order, the district court concealed from the

parties the basis for its ruling. Through her diligence, Mr. McClebb's trial counsel uncovered evidence that completely undermined the legality of the trial court's ruling, preventing trial counsel from objecting. At the time of the ruling, trial counsel could not have known there was a reason to object.

Under these unique circumstances, Mr. McClebb's failure to either object or request a stay contemporaneously is clearly excusable and not the result of trial strategy. Therefore, an exception to the contemporaneous objection rule is warranted in order to review the fundamental error at the heart of Mr. McClebb's writ application. Accordingly, Mr. McClebb moves this Court to grant his writ and grant Mr. McClebb his relief.

### a. Applicable Law

Generally, a party must object contemporaneously to a trial error in order to preserve that error for appellate review. La. Code Crim. Proc. art. 841. The Louisiana Supreme Court, however, has repeatedly "refused to apply the contemporaneous objection rule" under certain exceptional circumstances where application of this rule does not advance its underlying purposes. *State v. Arvie*, 505 So. 2d 44, 47 (La. 1987). As the Louisiana Supreme Court explained in *State v. Mart*, "[t]he contemporaneous objection rule serves two laudable and related purposes." 419 So. 2d 1216, 1218 (La. 1982). First, as a rule of fairness, the contemporaneous objection requirement prohibits the defense from "'sitting on' an error and gambling unsuccessfully on the verdict" but later reversing course on appeal. *Arvie*, 505 So. 2d at 47 (citing *Mart*, 419 So. 2d at 1218). Second, as a rule of "judicial efficiency," the contemporaneous objection rule serves to enforce the defense's duty to alert the trial court of potential errors so that the district court can correct or avoid those errors in the first instance. *Mart*, 419 So. 2d at 1218.

Where "inflexible" application of the contemporaneous objection rule advances neither purpose and prohibits review of egregious errors, that requirement should not apply. *Mart*, 419 So. 2d at 1218. As the Louisiana Fourth Circuit has noted, such an exception may be appropriate where the accused can demonstrate "that the failure to object was excusable and was not the result of trial strategy." *State v. Berry*, 630 So.2d 1330, 1336 (La. App. 4 Cir. 1993) (citing *State v. Mart*, 419 So. 2d 1216, 1219 (La. 1982)). Under those circumstances, appellate courts may disregard the contemporaneous objection rule in order to correct an error "so fundamental that it strikes at the very essence of the reliability of the fact-finding process." *Id.* (citing *Arvie*, 505 So. 2d at 47).

**b. Because the district court concealed the contents of the juror's note, Mr. McClebb was prevented from objecting to the improper declaration of a mistrial.**

In this case, the district court concealed the fact that the jury was not actually deadlocked at the time of its *sua sponte* mistrial declaration. After the judge received a note from the jury and called the jury back into the courtroom, he stated, "Ladies and gentlemen, based upon the fact that we've been attempting to get a verdict in this matter now for five and a half hours, I'm going to declare a mistrial. This case is over with." *Ex. 2* at 8. Eventually, after dismissing the jury, the judge stated, "Thanks y'all. State, hung jury." *Id.* at 9. However, the jury was not in fact hung. Trial counsel later learned, after interviewing a juror, that the note to the judge was from one juror who simply asked how late they would be deliberating for childcare arrangements. *see* Ugwu Aff. ¶ 4.g-h. This indicates that the jurors were in fact ready to continue deliberating. Yet, the judge concealed the content of the juror's note, deciding himself that the jurors could not reach a verdict solely based on the amount of time they had already been deliberating.

Due to this concealment, the defense could not possibly have lodged a contemporaneous objection to the trial court's mistrial order. Additionally, because the defense acted diligently in

uncovering the basis for its eventual objection and presenting that error to the trial court, the failure to object contemporaneously must be excused. Furthermore, because Mr. McClebb actively sought the verdict and full deliberations of his jury, his failure to object was not an attempt at gamesmanship. Rather, the trial court's improper declaration of a mistrial undermined the reliability of the fact-finding process by depriving Mr. McClebb of his "valued right to have his trial completed by a particular tribunal." *Wade v. Hunter*, 336 U.S. 684, 689 (1949). Thus, his failure to either object or request a stay must be deemed excused. While the Louisiana Supreme Court denied Mr. McClebb's emergency writ application, it held that he was not precluded from re-asserting the issues presented herein on appeal in the event of a conviction following trial. For all of these reasons, this Court should grant both Mr. McClebb's writ and his relief.

## III. Conclusion.

WHEREFORE, for all the reasons given above, and for any other reasons that may occur to this Honorable Court, petitioner respectfully asks this Court grant his writ and reverse the trial court's ruling denying his motion to quash the bill of indictment.

Respectfully submitted,

_____/s/Caroline Gabriel_____
Caroline Gabriel, La. Bar # 38224
William Most, La. Bar # 36914
Most & Associates, LLC
210 St. Charles Ave., Ste 2500 #9685
New Orleans, LA 70170
(985) 441-9355
Caroline.gabriel.ma@gmail.com
williammost@gmail.com

Madeleine Jennings, La. Bar # 38287
Orleans Public Defenders
2601 Tulane Avenue, Suite 700
New Orleans, LA 70119
(504) 821-8101
(504) 821-5285 (fax)
Mjennings@opdla.org