UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RASHEED McCLEBB** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-172** |
| **SUSAN HUTSON** | **SECTION "M" (2)** |

### RESPONSE TO PETITION FOR HABEAS CORPUS RELIEF

Petitioner Rasheed McClebb is a state pretrial detainee. He has applied to this Court for a writ of *habeas corpus* under 28 U.S.C. § 2241. For the following reasons, his application should be denied.

**I.   Record**

Presented contemporaneously with this response is the assembled State Court Record related to this case in three volumes. Volume 1 is the record of the Criminal District Court for the Parish of Orleans in Case No. 557-316. This volume is not the record as normally prepared by the Clerk for federal habeas petitions or direct appeals, (for example, it lacks the trial transcript and copies of all minute entries), but was obtained by Petitioner's counsel from the Clerk in an effort to expedite this proceeding, in a manner normally used for obtaining smaller portions of the record, in an effort to expedite these proceedings. Undersigned counsel has reviewed this volume and has no reason to believe that the record requested by the Appeals Division of the District Attorney's Office (a request which remains unfulfilled at the time of this filing) will have any additional records of consequence to the issues involved in this *habeas* proceeding. Counsel for Petitioner indicated that they believed this record

1

is adequate for the adjudication of this habeas action, and Respondent agrees. Respondent therefore has no objection to this Court's reliance on it as the record of the trial court.

Volume 2 contains the record of the Fourth Circuit Court of Appeal, docketed as Case No. 2024-K-0522. Volume 3 contains the record of the Louisiana Supreme Court, docketed as Case No. 2024-KK-1225. Nearly all records of substance can be found in Volume 3, and so this pleading cites to that volume (by page number of the PDF) for ease of reference whenever possible.

## II.  Procedural History

On March 9, 2023, an Orleans Parish Grand Jury indicted Petitioner on one count of second degree murder, in violation of La. R.S. § 14:30.1.[1] The facts of the charged offense are not pertinent to adjudication of the legal issues presented in this case. Petitioner relies on the Fifth Amendment's Double Jeopardy Clause to challenge the propriety of the mistrial declared by Judge Benedict J. Willard on July 10, 2024.

The jury trial in question commenced with voir dire on July 8, 2024. At the conclusion of the defense case on July 10, the jury retired to deliberate. The jury sent up at least two notes during their deliberations, and the parties were gathered to address these questions; Judge Willard also called the jury up, apparently *sua sponte*, to give a sentencing instruction that he had omitted from the original jury charges. At approximately 6:00 p.m., the jury returned to the courtroom again and Judge Willard declared a mistrial. Immediately after thanking the jurors and excusing them

---

[1] SCR. Vol. 3, at pp. 49-50 (Indictment).

2

to collect their belongings and depart, Judge Willard asked counsel for Mr. McClebb if "[y]ou said you wanted something or you don't?" Counsel for Petitioner responded "[n]othing we need at this time, Your Honor," and the parties and the Court conferred to select a pre-trial conference date.[2]

In the per curiam that Judge Willard prepared and sent to the Fourth Circuit Court of Appeal, he provided additional detail that goes beyond the transcript, stating in full:

> Regarding the case of **State v. Rasheed McClebb**, the trial testimony lasted approximately four (4) hours, according to the Motion to Quash. After 4:00pm, the jury had sent three (3) questions to address. The court responded on the record before all attorneys. The court sent the jury back to continue further deliberations. After five and a half (5 ½) hours, the jury returned to the courtroom. The jury indicated that no legal decision was imminent, and hopelessly deadlocked. The jury informed the Court that no further deliberations would help.
>
> Several jurors indicated that they were not changing their decision, therefore, the Court declared a mistrial. Defense Counsel suggested a pre-trial date. Ms. Brady Smith at no time expressed any dissatisfaction with the court. (see attached proceedings/mistrial transcript dated July 10, 2024, page 9, lines 20-24). All attorneys agreed to a pre-trial date of July 26,2024 without an objection.[3]

On July 26, 2024, the day of the pretrial conference, Petitioner's counsel filed a motion to quash the bill of indictment, arguing that there was no manifest necessity for the mistrial order, and that retrial of Petitioner would therefore violate his right against Double Jeopardy.[4] In the motion, counsel for Petitioner stated that "[i]t was

---

[2] *See generally* SCR Vol. 3 at pp. 118-128 (Transcript of proceedings and mistrial).
[3] SCR Vol. 3 at p. 143.
[4] SCR Vol. 3 at pp. 55-62.

not until after the jurors were excused from the courtroom that defense counsel realized that the Court had *sue sponte* declared the mistrial."[5]

Attached to the motion to quash was an affidavit by Ifechiluru Ugwu, a staff investigator for Orleans Public Defenders. In the affidavit, Ms. Ugwu related a "phone interview" conducted with a juror who served on the case, whom Ms. Ugwu declined to identify by name. This alleges that Judge Willard "did not inquire as to whether the jury was unable to reach a verdict" and "did not ask any jurors whether more time deliberating would be beneficial."[6]

At the pre-trial conference on July 26, 2024, Judge Willard heard arguments on the motion to quash.[7] Judge Willard pressed counsel for Petitioner to note that the entirety of the trial testimony took "[m]aybe three or four hours," while deliberations lasted "[f]ive and a half hours" before the mistrial declaration.[8] The trial court denied the motion to quash.

Petitioner sought review of that ruling from the Louisiana Fourth Circuit Court of Appeal. That Court, after receiving the above-quoted per curiam from the trial court[9] and a response from the State,[10] issued a written judgment granting writ and denying relief.[11] The appellate court specifically held that Petitioner "did not preserve the issue for review."[12] The Court's judgment discusses both the general

---

[5] SCR Vol. 3 at p. 56 (Page 2 of Motion to Quash).
[6] SCR Vol. 3 at pp. 63-64.
[7] *See generally* SCR Vol. 3 at pp. 109-116.
[8] SCR Vol. 3 at p. 113 (Page 5 of 6/26/24 transcript).
[9] *See* SCR Vol. 3 at p. 143.
[10] *See* SCR Vol. 3 at pp. 130-143.
[11] *See* SCR Vol. 3 at pp. 35-41.
[12] SCR Vol. 3 at p. 36.

requirement for a contemporaneous objection, as well as a rule the Fourth Circuit adopted in *State v. Copelin*, 206 So.3d 990 (La. App. 4 Cir. 2016), which required defendants claiming that a mistrial order was improper to avail themselves of Louisiana's unique emergency-review provision for mistrials, whereby Article 775.1 of the Code of Criminal Procedure requires a trial court, upon request of either party, to stay a mistrial order for 24 hours.

Petitioner sought review at the Louisiana Supreme Court, which denied writ.[13] Petitioner subsequently filed this habeas action, alleging that he is entitled to unconditional discharge based on a plea of former jeopardy.

### III. Habeas Corpus standards under 28 U.S.C. § 2241.

As a pretrial detainee, Petitioner brings this claim under 28 U.S.C. § 2241. State inmates must typically seek redress in the federal system by filing a petition for habeas corpus relief under 28 U.S.C. § 2244, *et seq.*, the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). However, where a petitioner seeks to raise federal claims while detained before trial, the proper vehicle for such claims is 28 U.S.C. § 2241, the pre-AEDPA habeas statute. *Martinez v. Caldwell*, 644 F.3d 238, 242 (5th Cir. 2011); *Holley v. Texas*, 194 F.3d 1309 (5th Cir. 1999) (per curiam). Claims in a § 2241 petition are not subject to the AEDPA's heightened standards of review. And whereas the AEDPA places a one-year limitations period on *habeas* claims (*see* 28 U.S.C. § 2244(d)(1)(a)), § 2241 imposes no such time limit. *Day v. McDonough*, 547 U.S. 198, 202 n. 1 (2006).

---

[13] SCR Vol. 3 at p. 1.

So long as an inmate's state criminal prosecution remains in progress, issuance of the writ is likely to run afoul of principles of comity and federalism. *See Evans v. Ct. Com. Pl., Del. County, Pa.*, 959 F.2d 1227, 1234 (3d Cir. 1992) ("In no area of the law is the need for a federal court to stay its hand pending completion of state proceedings more evident than in the case of pending criminal proceedings."). Federal courts must typically refrain from hearing pre-trial claims under the abstention rule articulated in *Younger v. Harris*, 401 U.S. 37 (1971). *See Kolski v. Watkins*, 544 F.2d 762, 766 (5th Cir. 1977) ("Petitioner must satisfy the *Younger* abstention hurdles before we may give federal habeas relief.") (footnote omitted). Further, although § 2241 contains no express exhaustion requirement, it is well settled that a pre-trial detainee must exhaust state remedies before his claims may be heard in federal court. *Dickerson v. Louisiana*, 816 F.2d 220, 225 (5th Cir. 1987). Federal *habeas* courts are accordingly not permitted to consider pre-trial claims from a state prisoner "unless the prisoner demonstrates that (1) he or she has exhausted available state judicial remedies, and (2) special circumstances warrant federal intervention" under *Younger*. STACY L. DAVIS, ET AL., 16A FED. PROC., L. ED. § 41:311 (2018).

The Supreme Court has also instructed that habeas courts should refuse to hear claims when the "independent and adequate state ground doctrine," also known as the "procedural default" doctrine applies. *See generally Coleman v. Thompson*, 501 U.S. 722, 729–30; 111 S.Ct. 2546, 2554; 115 L.Ed.2d 640 (1991), *holding modified by Martinez v. Ryan*, 566 U.S. 1; 132 S.Ct. 1309; 182 L.Ed.2d 272 (2012). This doctrine generally forecloses federal review "when a state court declined to address a

6

prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman*, 501 U.S. at 729–30; 111 S.Ct. at 2554. This rule is rooted in the principle that the Supreme Court of the United States "has no power to review a state law determination that is sufficient to support the judgment, [because] resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory," a rule which the Court has extended to "deciding whether federal district courts should address the claims of state prisoners in habeas corpus actions." *Id.* at 729; 111 S.Ct. at 2554. The posture of § 2241 cases brought by state pre-trial detainees means that default is not usually a viable defense to the petitioner's claim, but there is no reason to think that the doctrine cannot be invoked when the particular circumstances of the case implicate it.

## IV.  Petitioner's Cognizable Claim(s)

Petitioner's core cognizable contention is that the Fifth Amendment's Double Jeopardy Clause bars his retrial after the mistrial declared on July 10, 2024. Petitioner's reference to a Louisiana constitutional standard for mistrial "narrower than the comparable federal standard"[14] is not cognizable before this court. Federal courts exercising *habeas* jurisdiction "do not sit as a super state supreme court to review error under state law." *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir.1983), *cert. denied sub nom. Skillern v. Procunier*, 469 U.S. 873; 105 S.Ct. 224; 83 L.Ed.2d 153 (1984) (citations omitted). Petitioner's failure to reorient his legal claims to exclusively federal law, including the procedural doctrines that apply in *habeas*,

---

[14] ECF Doc. 1, at p. 11.

complicates the discussion of Petitioner's Double Jeopardy claim. Additionally, there is a notable distinction between the claim petitioner actually presented to the State courts and the claim in this petition, and an unexhausted claim that lurks beneath the surface.

Petitioner presents this case as an application of the "manifest necessity" standard first articulated in *United States v. Perez*, 22 U.S. (9 Wheat.) 579; 6 L.Ed. 165 (1824), which addressed the trial court's authority to declare a mistrial "without the consent of the prisoner." *Id.* at 579. Petitioner urges that "an exception to the contemporaneous objection rule is warranted" for review of this claim, as his "failure to either object or request a stay contemporaneously is clearly excusable and not the result of trial strategy."[15] In other words, Petitioner urged the State courts to treat his claim *as if he had objected*, and apply the manifest necessity doctrine applicable to those situations (hereinafter referred to as the "manifest-necessity claim").

The State courts reviewed Petitioner's claim as he presented it, finding that his manifest-necessity claim was barred by the lack of a contemporaneous objection, as well as failure to take advantage of the emergency-review provision available to him under Article 775.1 of the Code of Criminal Procedure. As discussed later, these are independent and adequate procedural bars that preclude review by this Court.

Petitioner's presentation of his claim in the state courts and in his Petition overlooks that the failure to object is not merely a procedural issue, but in fact changes the entire nature of his Double Jeopardy claim. *See United States v. El-*

---

[15] R. Doc. 1 at p. 14; SCR Vol. 3 [LASC] at p. 21 (Petitioner's LASC writ application at p. 18].

*Mezain*, 664 F.3d 467, 559-63 (5th Cir. 2011), *as revised* (Dec. 27, 2011). A manifest-necessity claim is implicated only when a defendant does not consent to mistrial. This Court has recognized that a "defendant's consent to a mistrial may be express or implied through a failure to object," and that the consequence of consent is that "the 'manifest necessity' standard is inapplicable and double jeopardy ordinarily will not bar a reprosecution." *Id.* at 559 (citing *Oregon v. Kennedy*, 456 U.S. 667, 672, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); *United States v. Palmer*, 122 F.3d 215, 218 (5th Cir. 1997)). This type of claim (hereinafter referred to as a "goaded-mistrial claim") is analytically distinct, as the Fifth Circuit explained in another *habeas* case brought under § 2241:

> When the defense moves for, or consents to, a mistrial, the Double Jeopardy Clause may bar retrial if the government "intended to goad the defendant" into requesting a mistrial. *See United States v. Wharton*, 320 F.3d 526, 531 (5th Cir.2003) (citation and internal quotation marks omitted). But this standard is exacting. Government misconduct "that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion ... does not bar retrial." *Kennedy*, 456 U.S. at 675–76, 102 S.Ct. 2083. Not even the government's "gross negligence" would prevent a retrial of the defendant. *Robinson v. Wade*, 686 F.2d 298, 306 & n. 17 (5th Cir.1982). Instead, the Double Jeopardy clause bars retrial only when "bad faith conduct by judge or prosecutor threatens harassment of an accused ... so as to afford the prosecution a more favorable opportunity to convict the defendant." [*United States v.*] *Dinitz*, 424 U.S. [600,] 611, 96 S.Ct. 1075[, 47 L.Ed.2d 267 (1976)]. A prosecutor or judge must specifically act in "bad faith" or must intend to goad the defendant "into requesting a mistrial or to prejudice the defendant's prospects for an acquittal." *Id.* at 611–12, 96 S.Ct. 1075.

*Martinez v. Caldwell*, 644 F.3d 238, 243 (5th Cir. 2011).

As discussed below, Petitioner's manifest-necessity claim is procedurally defaulted and without substantive merit, and Petitioner's goaded-mistrial claim (to

9

the extent he even asserts one in his Petition) is unexhausted (and thus subject to *Younger* abstention), and both claims are meritless, especially on the thin records presented to the state courts and this Court.

## V.  Petitioner's manifest-necessity claim is meritless and defaulted.

### a.  Petitioner's claim is fundamentally deficient because he consented to the mistrial.

As discussed above, the manifest necessity standard of *Perez* is only implicated where a defendant does not consent to the mistrial. Courts typically construe silence as consent, requiring a defendant to make his opposition known at the time— requiring a contemporaneous objection. The contemporaneous objection rule is typically applied in habeas as a procedural default that prevents review of a claim without regard to its merit. However, in this context, the failure to object is a defect in the merits of the claim itself. The defendant's lack of consent, communicated to the trial court through an objection or other arguments—is a substantive requirement of the constitutional claim. And while some doctrines allow for the excusal of a procedural bar that was imposed, no doctrine allows a Petitioner to prevail on a claim for which he cannot meet a substantive requirement.

In the unusual case where a Court has applied the manifest-necessity test to a situation where the defense did not object, the facts show a defense attorney making a much greater effort to be heard and lodge arguments on the mistrial, which were rebuffed by the trial court. For example:

> In this case, defense counsel made either two or three attempts to be heard during the district court's sua sponte consideration of whether or

> not to declare a mistrial. On each occasion, the court stopped counsel in her tracks, cutting her off once when the court was addressing the issue of whether to wait for the missing juror and twice more when the court was addressing the issue of manifest necessity. It was only after these three attempts to state her position had been firmly rebuffed that defense counsel lapsed into silence. To hold, under these circumstances, that the appellant freely, albeit tacitly, consented to the discharging of the jury would mock reality and at the same time condone an unfortunate curtness on the part of the district court. We do not think that consent to a mistrial fairly can be inferred from enforced silence.

*United States v. Toribio-Lugo*, 376 F.3d 33, 41 (1st Cir. 2004) (footnote omitted). That is a far cry from the circumstances here, where defense counsel was given the opportunity to put an objection on the record, and specifically declined to do so.[16] This Court should find Petitioner's effort to explain that he did not consent to the mistrial unconvincing, especially given the undeveloped record here.[17]

This reason alone should be sufficient to adjudicate the entirety of the petition and deny it on the merits.

### b. The procedural bars imposed by the state Court of Appeal additionally preclude review of this claim.

The Fourth Circuit faulted Petitioner both for not making a contemporaneous objection, and for not taking advantage of the emergency-review provision available under Article 775.1 of the Louisiana Code of Criminal Procedure, which entitled petitioner to a mandatory 24-hour stay in order to seek review of a mistrial order, and if successful, move forward with the trial before the same tribunal and vindicate in full the Petitioner's interest in a verdict from the jury he picked.

---

[16] SCR Vol. 3, at p. 126 (Page 9 of 7/10/24 mistrial transcript).
[17] *See* SCR Vol. 3, at p. 97 n.4 (Footnote 1 on Page 4 of Motion to Quash).

11

The contemporaneous-objection rule is a well-established rule under Louisiana law that often supports a habeas court's determination that a claim is procedurally defaulted. *See, e.g., Duncan v. Cain*, 278 F.3d 537, 541 (5th Cir. 2002). Under the particular circumstances of this case, and given that a timely objection is essential to establish the merits of a manifest-necessity claim, the contemporaneous-objection rule is in some sense "interwoven with the federal law" so as to be considered a ruling on the merits. *Michigan v. Long*, 463 U.S. 1032, 1040; 103 S.Ct. 3469, 3476; 77 L.Ed.2d 1201 (1983). Respondent does not believe that this prevents the State from relying on this procedural bar, although it may be a good reason for this Court to adjudicate the merits of this claim and determine that Petitioner's implied consent to the mistrial is fatal to that claim, without need for engagement in the somewhat more complex procedural bars.

Petitioner notes that the Louisiana Supreme Court has, at times, declined to apply the contemporaneous-objection rule, citing to *State v. Arvie*, 505 So.2d 44, 47-48 (La. 1987).[18] Petitioner observes, however, that the *Arvie* court stated that this practice takes place on "very rare occasions" in non-capital cases. *Id.* at 47 & n.2. The Fifth Circuit has "acknowledge[d] with approval the principle that an occasional act of grace by a state court in excusing or disregarding a state procedural rule does not render the rule inadequate." *Amos v. Scott*, 61 F.3d 333, 342 (5th Cir. 1995). Petitioner has not pleaded a substantial case to this Court that the contemporaneous-

---

[18] ECF Doc. 1, p. 13.

objection rule does not qualify as an independent and adequate procedural bar. This Court may rely on it in declining to consider the merits of the manifest-necessity bar.

This Court may also rely on the other procedural bar discussed at length by the state appellate court. In a thorough and well-reasoned opinion, Judge Vance described what she termed the "emergency review" provision that Louisiana enacted in Article 775.1 of the Code of Criminal Procedure, and determined (in a case brought under § 2254 rather than § 2241) that even if the petitioner had contemporaneously objected to the mistrial order, his double-jeopardy claim would still be barred by his failure to avail himself of that provision. *Copelin v. Vannoy*, CV 18-10970, 2021 WL 6125050, at *16-19 (E.D. La. Dec. 28, 2021). Respondent fully agrees with Judge Vance's reasoning, and, unable to improve on it, simply urges this Court to examine it and reach the same conclusion.

Magistrate Judge Wilder-Doomes of the Middle District of Louisiana has reached the opposite conclusion. *See Lewis v. Kent*, CV 20-484-JWD-EWD, 2022 WL 18276906, at *2-4 (M.D. La. Nov. 18, 2022), *report and recommendation adopted*, CV 20-484-JWD-EWD, 2023 WL 174965 (M.D. La. Jan. 12, 2023), *rev'd and remanded sub nom. Lewis v. Bickham*, 91 F.4th 1216 (5th Cir. 2024).[19] Judge Wilder-Doomes based her reasoning on a finding that "[s]imilar cases in the relevant timeframe demonstrate that Article 775.1 was not relied on by other Louisiana appellate courts that considered double jeopardy arguments on the merits without regard to whether

---

[19] In *Lewis*, the Petitioner ultimately obtained relief on the merits on direct appeal. The Fifth Circuit did not address the adequacy of the procedural bar, as the state eventually waived reliance on the procedural bar during the course of that litigation.

13

a writ was filed pursuant to Article 775.1, even where a mistrial was declared because of a hung jury, exactly the facts of *Copelin*." *Id.* at *3. In support of this, Judge Wilder-Doomes cited two cases: *State v. White*, No. 2017-0308 (La. App. 1 Cir. 9/15/17), 228 So.3d 213, 215; and *State v. Washington*, No. 14-522 (La. App. 5 Cir. 2/11/15), 168 So.3d 746, 749-50, *writ denied*, 2015-0475 (La. 1/15/16), 184 So.3d 704. *Lewis*, 2022 WL 18276906, at *4. However, on information and belief,[20] in neither of those cases did the State urge the appellate court to refuse to review the issue on that basis. This is good reason not to rely on these cases to establish inconsistent application of this procedural bar, as the question of whether to apply the procedural bar was not brought to the attention of the *White* and *Washington* courts, so they can hardly be said to have refused to apply the bar—they simply adjudicated the case as it came to them, consistent with the general principle of party-presentation. *Cf. Meadows v. Legursky*, 904 F.2d 903, 907 (4th Cir. 1990) ("The appeals court, however, found no *Doyle* [*v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976)] violation, and it is not evident from the opinion whether the State even advanced the issue of procedural default."). Thus, with great respect to Judge Wilder-Doomes, Respondent suggests that Judge Vance's analysis in *Copelin* represents the better approach to the issue on this state court record.

---

[20] Undersigned counsel has been in touch with the St. John the Baptist Parish prosecutor who handled the appeal in *Washington*, and staff in the Appellate Division of the East Baton Rough Parish District Attorney's Office, where *White* originated. Each of those prosecutors have provided undersigned counsel with an uncertified copy of the State's Appellee's brief that was filed in the respective cases, and it is based on the review of these documents that undersigned counsel makes this representation.

14

## VI. Petitioner does not plead a goaded-mistrial claim to this Court. To the extent that he does, it is unexhausted, may be defaulted, and lacks merit.

A Double Jeopardy claim can properly be brought where a defendant consented to a mistrial, but under a quite different standard than the manifest-necessity claim—the goaded-mistrial standard. *See generally Oregon v. Kennedy*, 456 U.S. 667; 102 S.Ct. 2083; 72 L.Ed.2d 416 (1982). The Fifth Circuit has explained this standard and applied it to a § 2241 case:

> When the defense moves for, or consents to, a mistrial, the Double Jeopardy Clause may bar retrial if the government "intended to goad the defendant" into requesting a mistrial. *See United States v. Wharton*, 320 F.3d 526, 531 (5th Cir.2003) (citation and internal quotation marks omitted). But this standard is exacting. Government misconduct "that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion ... does not bar retrial." *Kennedy*, 456 U.S. at 675–76, 102 S.Ct. 2083. Not even the government's "gross negligence" would prevent a retrial of the defendant. *Robinson v. Wade*, 686 F.2d 298, 306 & n. 17 (5th Cir.1982). Instead, the Double Jeopardy clause bars retrial only when "bad faith conduct by judge or prosecutor threatens harassment of an accused ... so as to afford the prosecution a more favorable opportunity to convict the defendant." *Dinitz*, 424 U.S. at 611, 96 S.Ct. 1075. A prosecutor or judge must specifically act in "bad faith" or must intend to goad the defendant "into requesting a mistrial or to prejudice the defendant's prospects for an acquittal." *Id.* at 611–12, 96 S.Ct. 1075.

*Martinez v. Caldwell*, 644 F.3d 238, 243 (5th Cir. 2011).

Crucially, while this doctrine might be a better fit with the circumstances of Petitioner's case, he has not presented it to any of the courts he has requested relief from. While *Oregon v. Kennedy* is the seminal case on this issue, Petitioner cites it only as a bare citation in a footnote without a pincite or explanation for its relevance,

15

or quotes it for its discussion of a manifest-necessity claim.[21] None of Petitioner's various pleadings (all counseled) can fairly be read as putting the state courts or this court on notice of a goaded-mistrial claim. Because it is not before this Court, it need not even be adjudicated.

Even if this Court were to construe the petition as raising a goaded-mistrial claim, it is clear that the claim is unexhausted. Louisiana law provides that a ground for quashal must be pleaded in a written motion, and that quashal cannot be granted for any reason other than those specifically pleaded in the motion. *See* La. C.Cr.P. art. 536.

The lack of exhaustion can be confirmed by looking at how the goaded-mistrial claim in *Martinez* was extensively reviewed by the State courts prior to being adjudicated on habeas. *See generally Martinez v. Caldwell*, CIV.A 08-617-D-M2, 2009 WL 6327492 (M.D. La. Nov. 2, 2009) ("*Martinez Magistrate Report*"), *objections sustained*, CIV.A 08-617-JJB, 2010 WL 1385024 (M.D. La. Mar. 29, 2010) ("*Martinez District Court Ruling*"), *vacated*, 644 F.3d 238 (5th Cir. 2011) ("*Martinez Appellate Opinion*"). There, after the motion to quash was filed, the Louisiana Supreme Court appointed a judge *ad hoc* to preside over the motion, who "held an incredibly extensive evidentiary hearing, including seventeen witnesses, oral argument, and post-hearing briefing" on the questions. *Martinez District Court Ruling*, 2010 WL 1385024, at *1-2. The trial judge who presided over the mistrial testified at the evidentiary hearing.

---

[21] *See* SCR Vol. 3, at p. 97 n.4 (Footnote 1 on Page 4 of Motion to Quash); *Id.* at p. 81 (Footnote on Page 12 of Fourth Circuit Writ Application); *id.* at p. 19 (Page 16 of Louisiana Supreme Court writ application) (quoting *Kennedy* for manifest-necessity standard); ECF Doc. 1 at p. 10 (quoting *Kennedy* for manifest-necessity standard).

16

*See Martinez Appellate Opinion*, 644 F.3d at 243. This enabled the Louisiana courts to reach a thoroughly reasoned decision on the merits, and this Court to review that decision and evaluate "the critical inquiry [of] what Judge Best intended to accomplish by intentionally withholding the direction of the jury's vote" until after he declared a mistrial.

Here, Judge Willard was the judge who presided over a motion to quash that attempted to raise serious concerns about misconduct by Judge Willard. Understanding this as a motion raising only a manifest-necessity claim, Judge Willard appropriately denied relief after only a brief discussion, based on his recollection of the length of the deliberations and his finding that Petitioner had acquiesced to the mistrial order, and thus the claim was without merit for closely-related procedural and substantive reasons. Had Petitioner put the trial court on notice of a goaded-mistrial claim and identified the relevant caselaw, Judge Willard could have been put on notice that a more extensive process was required. Instead, this Court has only an affidavit from an affiant with an interest in the proceedings, which relates hearsay from a juror whose identity the affiant willfully withheld. This is an insufficient record for adjudication of any Double Jeopardy claim that might be implicated by this case, and this Court should not short-circuit the state processes that make such a claim available. *Younger* abstention is appropriate.

Respondent does not understand Petitioner to have raised a goaded-mistrial claim to any court, including this one, and so this Court need not make any determinations on it other than to note it has not been presented. If the Court does

17

believe that Petitioner presents it in this habeas petition, there can be no doubt that it should be dismissed as unexhausted. If Petitioner believes that he has a meritorious goaded-mistrial claim, he must present it to the state courts in the first instance.

## CONCLUSION

Based on the foregoing, the State of Louisiana respectfully prays that this Honorable Court deny the Petition.

Respectfully submitted,

/s/ *Thomas Frederick*
Thomas Frederick
La. Bar No. 39885
Assistant District Attorney
Parish of Orleans

## CERTIFICATE OF SERVICE

  I hereby certify that a copy of the foregoing has been served upon petitioner's counsel by email, this 5th day of May, 2025.

              /s/ *Thomas Frederick*
              Thomas Frederick
              Assistant District Attorney
              Parish of Orleans