UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RASHEED McCLEBB                                              CIVIL ACTION

VERSUS                                                       NO. 25-172

SUSAN HUTSON                                                 SECTION M (2)

## ORDER & REASONS

Petitioner, Rasheed McClebb, a state pretrial detainee confined at the Orleans Parish Prison, filed a petition seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2241.[1] In the petition, McClebb claims that his Fifth Amendment right to be free from double jeopardy will be violated if he is retried on a charge for which a mistrial was declared at his first trial, and he asks this Court to intervene in the state-court proceedings.[2] Respondent, Orleans Parish Sheriff Susan Hutson ("Respondent"), opposes the petition,[3] and McClebb replies in further support thereof.[4] Having considered the parties' memoranda, the record, and the applicable law, the Court denies the petition.

**I.  BACKGROUND**

On March 9, 2023, a grand jury in Orleans Parish, Louisiana, indicted McClebb on one count of second-degree murder in violation of La. R.S. 14:30.1.[5] On July 8, 2024, a jury trial commenced in Orleans Parish Criminal District Court.[6] At about 12:17 p.m. on July 10, 2024, and after hearing the entire case, the jury retired to deliberate.[7] A little over an hour-and-a-half later,

---

[1] R. Doc. 1.
[2] *Id.*
[3] R. Doc. 19.
[4] R. Doc. 22.
[5] R. Doc. 18-3 at 49-50.
[6] R. Doc. 1-1 at 1.
[7] *Id.*

the jury requested to view some evidence and was brought back into the courtroom to see it.[8] Then they retired to continue deliberations.[9] At 3:32 p.m., the jury sent a note asking what to do if they were "undecided."[10] The judge instructed them to continue deliberations.[11] At 4:27 p.m., the jury asked to see more evidence, which was provided to them, and they continued deliberating.[12] Then, at 5:18 p.m., the judge *sua sponte* brought the jury back into the courtroom to advise them of sentencing ranges that he forgot to include in his original jury charge.[13] Shortly before 6:00 p.m., the jury sent another note.[14] At 6:00 p.m., the judge brought the jury back into the courtroom, declared a mistrial, and released the jury stating:

> Ladies and gentlemen, based upon the fact that we've been attempting to get a verdict in this matter now for five and a half hours, I'm going to declare a mistrial. This case is over with. I thank you guys for your time and attention. At this point, if you wish to answer questions from the state and/or the defense you can do that. If you decide that you're ready to go home, collect your belongings, ladies and gentlemen, and we'll see you guys -- I'm sorry. Y'all are finished so y'all don't have to come back if you did have another day. I will take care of that. All right? You don't have to. Are there any questions of me? Y'all did a good job. This is the process. Are there any questions of me? All right, ladies and gentlemen, y'all did y'all job. This is how it happens. Okay. This is how it happens. Nobody's perfect. We don't have a perfect system. So as I mentioned, thank y'all. If one of the jurors wants to talk to you, they can. If you don't feel like talking, you don't have to say anything. Just be polite, and I wish to go on my way. Please collect your belongings, no questions of me. Y'all have a good evening. Thank you. Go ahead, Ms. Smith. You said you wanted something or you don't?[15]

The defense attorney, Brady Smith, indicated that the defense did not need anything at that time.[16] Smith then asked the judge about setting a pretrial conference date.[17] The judge indicated he would

---

[8] R. Docs. 1 at 4 (citing R. Doc. 1-1 at 1); 1-2 at 2-5.
[9] R. Docs. 1 at 4 (citing R. Doc. 1-1 at 1); 1-2 at 2-5.
[10] R. Doc. 1 at 4 (citing R. Doc. 1-1 at 1).
[11] *Id.* (citing R. Doc. 1-1 at 1).
[12] R. Docs. 1 at 4 (citing R. Doc. 1-1 at 1); 1-2 at 5-6.
[13] R. Docs. 1 at 4 (citing R. Doc. 1-1 at 1); 1-2 at 6-8.
[14] R. Doc. 1 at 4 (citing R. Doc. 1-1 at 2).
[15] R. Doc. 1-2 at 8-9.
[16] *Id.* at 9.
[17] *Id.*

2

do it "right now" as there was a "hung jury," whereupon the attorneys and the judge agreed to set the pretrial conference on July 26, 2024.[18]

On July 24, 2024, Ifechiluru Ugwu, a staff investigator with the Orleans Public Defenders' office, interviewed an unnamed juror who told her that, when the jury knocked the fourth time (just before 6:00 p.m.), it was "because one juror wanted to know how long they would be deliberating because she might need to make childcare arrangements."[19] With this information, McClebb filed a motion to quash the bill of indictment, arguing that a second trial would violate his right to be free from double jeopardy under the Fifth Amendment and Louisiana law because there was no firm indication that the jury was hung when the judge called a mistrial and McClebb did not consent to it.[20]

McClebb's motion to quash was heard in open court on July 26, 2024.[21] Smith argued that the judge improperly declared a mistrial when the jury never said that it was hung.[22] The judge pressed Smith saying that the jurors do not "know that language."[23] Smith continued that the jury did not say "[s]omething to [the] effect" that they could not reach a verdict.[24] The judge responded by asking Smith how long the trial testimony lasted.[25] Smith eventually stated that the testimony lasted "[m]aybe three or four hours."[26] The judge then asked Smith how long the jury deliberated and she responded "[f]ive and a half hours."[27] The judge denied the motion reasoning that "[t]he deliberations were longer than the trial."[28]

---

[18] *Id.*
[19] R. Doc. 1-1 at 2.
[20] R. Doc. 1-3.
[21] R. Doc. 1-4.
[22] *Id.* at 3.
[23] *Id.* at 3-4.
[24] *Id.* at 4.
[25] *Id.*
[26] *Id.* at 4-5 (quote at 5).
[27] *Id.* at 5.
[28] *Id.*

3

McClebb filed a writ application with the Louisiana fourth circuit court of appeal.[29] That court required the district judge to submit a *per curiam*.[30] The district judge complied with the order and filed a *per curiam* stating:

> Regarding the case of **State v. Rasheed McClebb**, the trial testimony lasted approximately four (4) hours, according to the Motion to Quash. After 4:00pm, the jury had three (3) questions to address. The court responded on the record before all attorneys. The court sent the jury back to continue further deliberations. After five and a half (5 ½) hours, the jury returned to the courtroom. The jury indicated that no legal decision was imminent, and hopelessly deadlocked. The jury informed the Court that no further deliberations would help.
>
> Several jurors indicated that they were not changing their decision, therefore, the Court declared a mistrial. Defense Counsel suggested a pre-trial date. Ms. Brady Smith at no time expressed any dissatisfaction with the court. … All attorneys agreed to a pre-trial date of July 26, 2024 without an objection.[31]

On September 16, 2024, the Louisiana fourth circuit issued a written ruling, granting McClebb's writ application, but denying relief.[32] The appellate court held that McClebb did not preserve the validity of the mistrial declaration for review because he failed to lodge a contemporaneous objection or invoke Louisiana Code of Criminal Procedure article 775.1.[33] McClebb subsequently filed a writ application with the Louisiana supreme court, which was denied.[34]

---

[29] R. Doc. 18-2 at 9-46.
[30] R. Doc. 18-3 at 33.
[31] R. Doc. 1-5 at 1.
[32] R. Doc. 1-6.
[33] *Id.* at 2-6. Article 775.1 provides:

> If a judge orders a mistrial, then upon motion of either the state or the defendant, the court shall order an automatic twenty-four-hour stay of all proceedings in which either the state or the defendant may take an emergency writ application to the appropriate reviewing courts with appellate jurisdiction, including the Louisiana Supreme Court. The jury shall not be released pending the stay unless both the state and defendant agree to release the jury.

La. Code Crim. Proc. art. 775.1.
[34] R. Doc. 18-3 at 1.

## II.    PENDING MOTION

McClebb filed the instant § 2241 petition asking this Court to prevent the state from retrying him.[35]  McClebb argues that the trial judge declared a mistrial without "manifest necessity," and without his consent, which, says McClebb, means that another trial would violate his constitutional right to be free from double jeopardy.[36]  McClebb asserts that the judge *sua sponte* improperly declared a mistrial without "manifest necessity" because there was no indication that the jury was hung.[37]  McClebb also argues that his failure to lodge a contemporaneous objection to the mistrial declaration should be excused because the trial judge concealed the content of the jury's note, his counsel assumed that the note indicated that the jury was hung, and he only later discovered the note's content – namely, that the jury simply wanted to know how much longer they would deliberate that night, not in total.[38]

In opposition, Respondent argues that McClebb is asking this Court, as he did the state courts, to treat his double jeopardy claim as if he had objected to the judge's mistrial declaration and apply the "manifest necessity" doctrine.[39]  But, says Respondent, McClebb "overlooks that the failure to object is not merely a procedural issue, but in fact changes the entire nature of his [d]ouble [j]eopardy claim[,]" because "manifest necessity" applies only if a defendant does not consent to a mistrial, and here, the sequence of events shows that McClebb impliedly consented

---

[35] R. Doc. 1.
[36] *Id.* at 7-13.  McClebb also makes arguments under Louisiana law, specifically, La. Code Crim. Proc. art. 775, which provides the conditions under which a judge may declare a mistrial in a criminal case.  This Court can only review McClebb's claims that arise under the federal Constitution.  The Supreme Court has "stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990)).  Indeed, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions[,]" but rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 67-68 (citing 28 U.S.C. § 2241; *Rose v. Hodges,* 423 U.S. 19, 21 (1975)).  Accordingly, the Court will not consider McClebb's arguments regarding Louisiana Code of Criminal Procedure article 775.
[37] R. Doc. 1 at 12-13.
[38] *Id.* at 13-16.
[39] R. Doc. 19 at 8-11.

by failing to object and by proceeding to schedule a pretrial conference.[40] Respondent further argues that the procedural bar imposed by the Louisiana appellate court – namely, McClebb's failure to object to the mistrial declaration – precludes review of the claim but, because "a timely objection is essential to establish the merits of a manifest-necessity claim," thus making "the contemporaneous-objection rule in some sense … a ruling on the merits," there "may be a good reason for this Court to adjudicate the merits of this claim and determine that [McClebb's] implied consent to the mistrial is fatal to that claim, without need for engagement in the somewhat more complex procedural bars."[41]

McClebb replies, reurging that his failure to object cannot be deemed implied consent because the judge withheld from the defense that the jury did not indicate that it was hung, and only later, did he discover that he had reason to object to the mistrial declaration.[42] Specifically, McClebb contends that the "trial court did not poll the jury, did not provide defense counsel with any specific reasons the jury was supposedly deadlocked, hid the content of the note the jury provided to the court, and did not provide defense counsel with the opportunity to make suggestions to solve the alleged problem before making his *sua sponte* ruling of a mistrial."[43] McClebb acknowledges that the judge addressed his counsel after he declared the mistrial, but that was supposedly for a different issue, not to give her an opportunity to object.[44] McClebb reasserts that he was prejudiced by the trial judge withholding the information about the note which would have given him a reason to object and consequently deprived him of his right to have the jury

---

[40] *Id.* (quote at 8). Respondent also argues that, to the extent McClebb raised a "goaded-mistrial" claim, it is unexhausted and meritless. *Id.* at 9-10, 15-18. McClebb did not raise a "goaded-mistrial" claim in his petition and did not address one in his reply. R. Docs. 1; 22. Thus, the Court finds that he did not raise such a claim and need not address it further.
[41] R. Doc. 19 at 11-14 (quotes at 12).
[42] R. Doc. 22 at 2-8.
[43] *Id.* at 3.
[44] *Id.* at 3-4 n.1.

decide the case.[45]  Finally, McClebb argues that the failure to object is excusable because it was not the result of gamesmanship.[46]

### III. LAW & ANALYSIS

#### A. Standard of Review

The federal writ of habeas corpus has a "grand purpose – the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty." *Jones v. Cunningham*, 371 U.S. 236, 243 (1963).  A state pretrial detainee, who has not yet been convicted in state court, like McClebb, may seek habeas relief pursuant to 28 U.S.C. § 2241 if he is "in custody in violation of the Constitution or laws or treaties of the United States."[47]  28 U.S.C. § 2241(c)(3); *see also Martinez v. Caldwell*, 644 F.3d 238, 242 (5th Cir. 2011) (stating that a habeas petition brought by a pretrial detainee is governed by § 2241).  Habeas claims brought under § 2241 are reviewed *de novo*.  *Martinez*, 644 F.3d at 242.

#### B. Double Jeopardy

In *Martinez*, the Fifth Circuit succinctly explained the double jeopardy as follows:

> The Fifth Amendment's Double Jeopardy Clause protects a criminal defendant from repeated prosecutions for the same offense.  Under that clause, a defendant has the right "to have his trial completed by a particular tribunal." *Wade v. Hunter*, 336 U.S. 684, 689 (1949).  More specifically, a defendant has a right to a complete trial by the jury first selected and impaneled. *See generally United States v. Scott*, 437 U.S. 82, 93-94 (1978).  When a defendant's first trial is terminated prior to verdict, the circumstances of the termination determine whether the Fifth Amendment bars retrial.  If the trial is terminated over defense objection, retrial is prohibited absent "manifest necessity." [*Oregon v.*] *Kennedy*, 456 U.S. [667,] 672 [(1982)].  A hung jury is "the prototypical example" of manifest necessity. *Id.*  In

---

[45] *Id.* at 6-7.
[46] *Id.* at 7-8.
[47] "Though the *Younger* abstention doctrine generally counsels federal courts to abstain from adjudicating challenges to criminal prosecutions pending in state courts, 'federal courts will entertain pretrial habeas petitions that raise a colorable claim of double jeopardy.'" *Stanley v. Baca*, 555 F. App'x 707, 708 (9th Cir. 2014) (quoting *Mannes v. Gillespie*, 967 F.2d 1310, 1312 (9th Cir. 1992)); *see Showery v. Samaniego*, 814 F.2d 200, 201 n.5 (5th Cir. 1987) (finding that the *Younger* doctrine does not apply to double jeopardy claims).  A colorable double jeopardy claim is one that "has 'some possible validity.'" *Stanley*, 555 F. App'x at 708 (quoting *United States v. Zone*, 403 F.3d 1101, 1104 (9th Cir. 2005)).  McClebb's double jeopardy claim fits this definition.

> the case of a mistrial declared at the defendant's request, the manifest necessity standard does not apply. *Id.* This is because a defendant's motion for mistrial constitutes an election to forgo the "valued right to have his guilt or innocence determined by the first trier of fact." *Scott,* 437 U.S. at 93 (*citing United States v. Dinitz*, 424 U.S. 600, 609 (1976)). So too, when a defendant expressly or impliedly consents to a mistrial. *United States v. Palmer*, 122 F.3d 215, 218 (5th Cir. 1997). And, if a defendant fails to timely object to a mistrial declaration, he is held to have impliedly consented to the mistrial and may be retried in a later proceeding. *Id.* at 218.

*Martinez*, 644 F.3d at 242-43 (some citations omitted). If the defendant did not consent to the mistrial, the prosecution has the burden of demonstrating "manifest necessity" for any mistrial if it is to avoid the double jeopardy bar. *Arizona v. Washington*, 434 U.S. 497, 505 (1978).

The question presented is whether McClebb impliedly consented to the trial judge's mistrial declaration. The Court finds that he did. The Fifth Circuit has held that "[i]f a defendant does not timely and explicitly object to a trial court's *sua sponte* declaration of mistrial, that defendant will be held to have impliedly consented to the mistrial and may be retried in a later proceeding." *Palmer*, 122 F.3d at 218 (citing *United States v. Nichols,* 977 F.2d 972, 974 (5th Cir. 1992)). "The determination of whether a defendant objected to a mistrial is made on a case-by-case basis, and the critical factor is whether a defendant's objection gave the court sufficient notice and opportunity to resolve the defendant's concern." *United States v. El-Mezain*, 664 F.3d 467, 559 (5th Cir. 2011) (citing *United States v. Fisher,* 624 F.3d 713, 717 (5th Cir. 2010)). Here, McClebb was given an opportunity to object to the trial court's mistrial declaration and failed to do so. After declaring the mistrial, the judge specifically addressed defense counsel, but she did not lodge an objection or invoke Louisiana Code of Criminal Procedure article 775.1 at that time. It is irrelevant that she thought the judge was addressing her for a different issue. At that moment, defense counsel could and should have objected to the mistrial declaration, whether by means of an article 775.1 motion or some other way. *See Montano v. Texas*, 759 F. App'x 315, 317-18 (5th

8

Cir. 2019) (holding that the defendant impliedly consented to a mistrial when the judge addressed counsel and counsel failed to enter an objection to the mistrial declaration). Contrary to McClebb's assertions, defense counsel had enough information to object. At that moment, she knew that the trial judge did not reveal the contents of the jury's last note, nor did he poll the jury, and so the attorney could have determined then that the jury might not have been hung. Defense counsel also impliedly consented to the mistrial declaration by agreeing to set, indeed asking to set, a new pretrial conference date. *See Stanley v. Biter*, 2023 WL 2325540, at *2 (9th Cir. Mar. 2, 2023) (finding implied consent when attorney did not object to mistrial declaration and "engag[ed] in a discussion about the timing of a new trial"); *Love v. Morton*, 944 F. Supp. 379, 385 (D.N.J. 1996) ("Counsel has ample meaningful opportunity to object where following a mistrial declaration the trial judge remains available to entertain other objections, schedule the second trial, or otherwise discuss the case with counsel."), *aff'd*, 112 F.3d 131 (3d Cir. 1997). Moreover, defense counsel's failure to invoke article 775.1 further deprived the trial judge, and the Louisiana appellate courts, of the opportunity to address the issue. *See State v. Copelin*, 206 So. 3d 990, 1000 (La. App. 2016) (holding that an assignment of error was not preserved for review when the defendant failed to invoke article 775.1, and noting that "[t]he Louisiana Supreme Court has repeatedly held that an irregularity or error cannot be availed of after the verdict unless it was objected to at the time it occurred; and, as enacted, Article 775.1 preserves the contemporaneous objection rule with respect to the declaration of a mistrial"). In sum, the totality of the circumstances shows that McClebb impliedly consented to the mistrial declaration.

McClebb's argument that he should be excused from failing to object, or that implied consent cannot be inferred from his failure to object, is equally unavailing. If the Court were to find implied consent lacking, the "manifest necessity" doctrine would apply, and "[a] hung jury is

'the prototypical example' of manifest necessity." *Martinez*, 644 F.3d at 243 (quoting *Kennedy*, 456 U.S. at 672). "A court's decision to grant a mistrial when a jury is deadlocked is 'accorded great deference by the reviewing court.'" *Copelin v. Vannoy*, 2021 WL 6125050, at *19 (E.D. La. Dec. 28, 2021) (quoting *Arizona,* 434 U.S. at 510). "This is because the 'trial court is in the best position to assess all the factors which must be considered in making a necessarily discretionary determination whether the jury will be able to reach a just verdict if it continues to deliberate.'" *Id.* (quoting *Arizona*, 434 U.S. at 510 n.28). A trial court, in declaring a mistrial, need only provide "sufficient justification" for its ruling; it need not make "an explicit finding of 'manifest necessity'" or "explain that ruling more completely." *Arizona*, 434 U.S. at 516-17.

The judge presiding over McClebb's trial determined that the jury was deadlocked after the jurors asked what to do if they were "undecided" and then, later, how much longer they would be required to deliberate that night. By the time the jury sent the last note, around 6:00 p.m., they had been deliberating for five-and-a-half hours on a single-charge case for which the presentation of evidence took only three to four hours. "[T]he length of time to be afforded a jury for deliberation [before the declaration of a mistrial] is a matter within the discretion of the trial judge." *State v. Ancar*, 746 So. 2d 269, 273-74 (La. App. 1999) (citing La. Code Crim. Proc. art. 775; *State v. Simmons*, 414 So. 2d 705 (La. 1982)). "The complexity and severity of the case is an important factor in the determination of what is a reasonable time." *Id.* at 274. This Court cannot find error in the trial judge's decision to declare a mistrial when, by 6:00 p.m., the jury had deliberated for longer than it took to receive the evidence, was asking how much longer they had to stay, and had previously indicated that it was "undecided." *See Copelin*, 2021 WL 6125050, at *20 (holding that the trial judge did not abuse his discretion in calling a mistrial when, after a two-day trial, the jury deliberated for more than five hours and indicated it could not reach a verdict that night); *see*

also *Grogan v. United States*, 394 F.2d 287, 289-90 (5th Cir. 1967) (holding that the trial judge did not abuse his discretion by declaring a mistrial after 5:00 p.m., when the jury had deliberated for five hours following a four-day trial); *United States v. Brahm*, 459 F.2d 546, 550 (3d Cir. 1972) (holding that it was no abuse of discretion for the trial judge to declare a mistrial after 6:00 p.m., when the jury had deliberated for over five hours "in a case that took only two days for the presentation of all evidence and arguments of counsel to the jury").  Accordingly, McClebb's habeas petition fails because either he impliedly consented to the mistrial declaration or the trial judge had a "manifest necessity" (*i.e.*, a hung jury) for declaring a mistrial.

### IV.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that McClebb's petition for a writ of habeas corpus under § 2241 is DENIED.

New Orleans, Louisiana, this 8th day of October, 2025.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE